IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:02-cr-00053-4 |
| | ) | Judge Trauger |
| KENNETH B. KIMBALL | ) | |

**MEMORANDUM AND ORDER**

On December 7, 2021, the defendant filed a *pro se* Motion for Compassionate Release (Doc. No. 1055). Counsel was appointed, who filed a Supplemental Motion for Compassionate Release (Doc. No 1068), to which the government has filed a Response (Doc. No. 1073). This is the defendant's third request for compassionate release. The first motion was denied on June 5, 2020 (Doc. No. 28), was appealed, and was affirmed on February 25, 2021 (Doc. No. 41). The second motion was denied on June 14, 2021 (Doc. No. 1052). This motion is based upon his medical conditions, as well as needing to care for his wife, who has severe asthma. His second motion was based upon his wife's medical condition, and the court declines to revisit that issue.

The defendant is serving two consecutive life sentences plus 15 years, a sentence twice imposed by former Judge Todd Campbell of this court. The government's Response to the defendant's first Motion for Compassionate Release contains a concise factual and procedural summary that the court reproduces here:

> From approximately 1999 through 2002, Kimball was the head of a drug trafficking operation that sold hundreds of kilograms of cocaine and laundered the proceeds through fraudulent transactions at automotive businesses that he owned. (Presentence Investigation Report ("PSR") ¶¶ 29-92.) *See also United States v. Kimball*, 194 F. App'x 373, 375-76 (6th Cir. 2006). In 2000, two of Kimball's

1

couriers were arrested with 40 kilograms of cocaine, which they had just purchased from one of Kimball's suppliers in Texas. *Kimball*, 194 F. App'x at 375-76. When Kimball suspected that the supplier was somehow behind the arrest of the couriers, he instructed an underling to kill the supplier, providing him with a bomb to carry out the job. *Id.* Later, Kimball and a co-defendant, Randall Parker, agreed that the couriers, too, should both be killed, and Kimball made efforts "to find someone who would do the deed for $10,000." *Id.* Still later, Kimball "became concerned that Parker might testify against him," and so he asked the original hit man—the one he had instructed to kill the supplier with a bomb—to kill Parker as well. *Id.*

On the basis of this and other related criminal conduct, on December 17, 2003, Kimball was charged, along with four co-defendants, in a twenty-six count third superseding indictment. (PSR ¶ 1.) The charges against Kimball included drug trafficking offenses (Counts 1, 2, 3, 5, 13, 15 & 25), money laundering (Counts 4, 7, 8, 12, 14 & 26), illegal possession and use of firearms, destructive devices, and explosives (Counts 6 & 17-19), solicitation to commit murder (Count 16), obstruction of justice (Count 23), and witness tampering (Count 24). (DE# 338, Third Superseding Indictment.) Kimball pled not guilty to the charges. (DE# 362.) After a three-week long jury trial, Kimball was convicted on all counts and sentenced to two consecutive life sentences, plus fifteen years. (DE# 736-1, Amended Judgment.)

Kimball appealed his conviction and sentence. *See Kimball*, 194 F. Ap'x at 376. The Sixth Circuit rejected most of Kimball's arguments, but ultimately vacated his sentence and remanded the case for resentencing in light of *Booker*. *Id.* at 378. On remand, the district court "applied the decision in *Booker*, but ultimately imposed the same sentence it had imposed prior to remand." *Kimball v. United States*, 2012 WL 5865245, at *2 (M.D. Tenn. Nov. 19, 2012). Kimball then filed another direct appeal, this time challenging the reasonableness of his sentence of incarceration. *United States v. Parker*, 341 F. App'x 122, 124-25 (6th Cir. 2009). The Sixth Circuit rejected that argument as well, noting that "Kimball stands alone among the conspirators as the undisputed kingpin and mastermind of the cocaine-trafficking scheme, and in hiring others to kill four witnesses. His sentence therefore rightly reflects the added seriousness of his offenses and the need to provide just punishment for them." *Id.* at 125.

(Doc. No. 1025 at 1-3).

The defendant is 69 and has served approximately 20 years of his sentence. He has exhausted his administrative remedies and is housed at FCI Memphis in Memphis, Tennessee. The medical records filed by the government from the Bureau of Prisons substantiate that the defendant has hypertension, gout, high cholesterol and is prediabetic. Only one of these conditions, hypertension,

2

is rated by the Centers for Disease Control as possibly putting someone at increased risk, should they contract Covid-19. In fact, the defendant did contract Covid-19 in December 2020 (Doc. No. 1075-1 at 2) and apparently fully recovered. He is on several medications and the records reflect that he is "doing well" on these medications. (Doc. No. 1075-1 at 9, 1072-2 at 12). Although his hypertension has been characterized as "Stage I" on occasion (Doc. No. 1075-1 at 20), it has been "Elevated" at other times (Doc. No. 1075-2 at 13) and even "Normal" very recently (Doc. No. 1072-2 at 7). For these reasons, the defendant's medical condition hardly qualifies as an extraordinary and compelling reason for his early release. But he has an even more serious hurdle to overcome, which he has not.

The Sixth Circuit has made very clear that a district court would abuse its discretion by granting early release to an inmate who has been given access to the Covid-19 vaccine, but declined to be vaccinated. Here, the defendant has refused the Covid-19 vaccine on two occasions, March 24, 2021 (Doc. No. 1075-1 at 46) and April 2, 2021 (Doc. No. 1075-1 at 70). That fact alone would justify the denial of his motion. *U.S. v. Lemons*, 15 Fed.4th 747 (6th Cir. 2021); *U.S. v. Traylor*, 16 Fed.4th 485 (6th Cir. 2021).

Even if the court were to reach the necessity of analyzing the factors under 18 U.S.C. § 3553(a) in ruling on this motion, those factors, too, would militate against the granting of the motion. The court is cognizant of the fact that the defendant has had no disciplinaries while incarcerated in the Bureau of Prisons. He is highly praised in letters sent to the court by BOP personnel in Memphis (Doc. Nos. 1069, 1079), and his risk of recidivism level is now considered minimal (Doc. No. 1077 at 1). These are good developments. However, a highly respected judge of this court who tried this jury case imposed the most severe of sentences twice upon this defendant as warranted by his

criminal conduct in this case. The court finds, once again, that the compassionate release of this defendant would not take into account the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, or be a just punishment for these multiple, serious offenses.

For these reasons, the defendant's motion is DENIED.

IT IS SO ORDERED.

_____
ALETA A. TRAUGER
U.S. DISTRICT JUDGE